MATTER OF DON DONALDSON'S KEY BAIL SERVICE

In Bond Cancellation Proceedings

A 17971351

*Decided by Acting Regional Commissioner September 30, 1969*

Where an alien released from Service custody under delivery bond conditioned upon his surrender on demand for deportation, departed the United States prior to the date demanded for surrender, his departure, in the absence of aggravated circumstances and at no expense to the Government, amounts to substantial compliance with the terms of the bond, hence, the outstanding delivery bond is cancelled.

ON BEHALF OF OBLIGOR:
Charles Bagby, Esquire
681 Market Street
San Francisco, California 94105

ON BEHALF OF ALIEN:
Julio L. Juarez, Esquire

This is an appeal from the District Director's notice of October 17, 1968 advising obligor that on July 8, 1968 the bond in the amount of $2,000 posted by the obligor on April 14, 1968 was breached for failure upon demand made July 2, 1968 to surrender the alien for deportation on July 8, 1968.

The alien, a 36-year-old male native and citizen of Portugal, entered the United States as a visitor on about May 8, 1967. Service efforts to locate the alien were unsuccessful and on April 19, 1968 his then attorney surrendered him to the Service for a deportation hearing held on that date pursuant to an order to show cause and warrant for arrest of alien. The Special Inquiry Officer found him to be an alien unlawfully in the United States and ordered that in lieu of deportation he be granted voluntary departure without expense to the Government on or before May 19, 1968, or any authorized extension beyond such date, and in the alternative that if he failed to depart as required, the privilege of voluntary departure be withdrawn without further notice or proceedings and the alien be deported from the United States to Portugal. The alien's release under bond was authorized on date of his hearing and the date for his voluntary departure was extended on one occasion to June 19, 1968.

Since there was no evidence or verification of the alien's departure on or before June 19, 1968, a warrant for his deportation was issued on June 20, 1968 and the bond declared breached on July 8, 1968 for obligor's failure to surrender the alien for deportation on that date pursuant to a timely and proper demand sent to obligor by certified mail on July 2, 1968. A copy of this demand to surrender was mailed to the alien's then attorney and a copy also sent by certified mail to the alien. This latter certified letter was returned by the postal authorities marked "unclaimed."

Counsel on appeal submits that the bond was posted to assure the alien's deportation and was declared breached on the sole ground that obligor did not surrender the alien for deportation on July 8, 1968. He further submits that the alien contacted the Service during the latter part of June 1968 and made arrangements whereby he would depart to the United States via Mexico at no expense to the Government and that while the obligor was not made privy to these arrangements, the obligor's office manager phoned the Service office and verified that such agreement had been entered into between the alien and the Service. Although the alien did not depart within the time agreed upon, he did, on July 4, 1968, commence his departure trip and on July 5, 1968 he was in Vancouver, B.C., Canada. As evidence of this, counsel presents: the original of a motel bill and receipt showing that one Eric or Elio Boleto was in a motel (room 307) located in Vancouver from July 5, 1968 to July 9, 1968; the original of a letter from the alien mailed from Lisboa, Portugal to the obligor; and a copy of two pages in the alien's passport, one shows that the passport was issued to the alien and the other is stamped to show non-immigrant entry into Canada on July 5, 1968. Under these conditions, counsel contends that it was not possible for obligor to surrender the alien for deportation on July 8 since he had departed the United States on July 5. Hence, the Government's purpose in requiring the bond was accomplished-namely, the alien's deportation, and to collect from the obligor under these circumstances is not reasonable as alien had effected his own deportation. Counsel further contends that when the Service agreed to change the alien's departure date whereby he could leave at his own expense on a date prior to that set for his deportation this action on the Government's part modified the conditions of the bond without notice to and concurrence of obligor and thereby cancelled any theretofore written contractual agreement set forth in the bond. This action served to cancel the obligation of surety and released them from any requirements of the bond. In view of

the conclusion made, we do not find it necessary to explore or decide this issue.

Since the alien was under an order of deportation when he left the United States on July 5, 1968, he was deported in pursuance of law. (Sec. 101(g), Immigration and Nationality Act; 8 U.S.C. 1101(g)). Although there was a technical violation of the conditions of the bond in that the obligor did not surrender the alien to the Service on July 8, 1968, technical violations do not necessarily justify a breach of bond, which is in the nature of a penalty. In fact, the regulations provide that there is a bond breach where there has been a *substantial* breach of the stipulated conditions. (8 CFR 103.6(e)).

The purpose of the bond was to assure the alien's departure from the United States and he deported himself to Portugal at no expense to the Government. While the Service expended some time and expense in the initial state of the alien's unlawful stay in the United States, the Government was not required to defray the expense of his deportation to Portugal. In evaluating all of the factors in this case and the lack of aggravated circumstances, we conclude that there has been no substantial violation of the conditions of the bond.

**ORDER:** It is ordered that the bond not be declared breached but that it be cancelled since the alien deported himself from this country on July 5, 1968.